IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| AT&T CORPORATION, etc., | : | |
|    Plaintiff, | | |
| | : | Case No. 3:19-cv-192 |
|    v. | | JUDGE WALTER H. RICE |
| | : | |
| J&J SCHLAEGEL, INC., | | |
|    Defendant. | | |

---

DECISION AND ENTRY OVERRULING MOTION FOR SUMMARY JUDGMENT OF DEFENDANT J&J SCHLAEGEL, INC. (DOC. #30), AND OVERRULING MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY OF PLAINTIFF AT&T CORPORATION (DOC. #37)

---

Before the Court are two motions for summary judgment: Defendant, J&J Schlaegel, Inc's. Motion for Summary Judgment ("Schlaegel's Motion"), Doc. #30, and Plaintiff, AT&T Corporation's Motion for Summary Judgment as to Liability ("AT&T's Motion"), Doc. #37.

AT&T Corporation, ("AT&T" or "Plaintiff"), and J&J Schlaegel, Inc., ("Schlaegel" or "Defendant"), have each filed a response and reply to the motions for summary judgment. Docs. ##36, 40, 38 and 41.

I.    **Background Facts**

On January 17, 2017, Schlaegel, an excavator located in Urbana, Ohio, was awarded a contract by the Orange Township Board of Trustees and administered by the Delaware County Engineer's Office. Doc. #30, PAGEID##1881-1882.  The government project, known as the Bale Kenyon Road Project, was a road widening project. *Id*. at 1882.  The project required Schlaegel to remove and replace box culverts[1] and certain wing walls[2] for a bridge over the road in Lewis Center, Ohio.

On July 13, 2017, a meeting was held that included Chad Harkness, a representative of AT&T, and Schlaegel's representative, Chris Schlaegel.  At this meeting, Schlaegel was informed that AT&T's facilities ran under at least one of the wing walls and that an AT&T tech needed to be present for the removal of those wing walls.  Schlaegel agreed to this request.  *Id*. at PAGEID##177-178. That same day, Chad Harkness sent an email to "J&J Schlaegel, Inc." and several others confirming the earlier meeting and stating that "an AT&T tech will need to be on site for the removal of the wing walls." The email also stated, to Dennis

---

[1] Box culverts are four-sided precast concrete structures used in underpasses, tunnels, subways, and bridges. They are embedded by soil and water is able to flow through them.

[2] In a bridge, the wing walls are adjacent to the abutments and act as retaining walls. They are generally constructed of the same material as those of abutments. The wing walls can either be attached to the abutment or be independent of it.

Polcano of AT&T who was also copied on the email, that "[T]he ATT Transmission Fiber passes under the south wing wall." Doc. #37, PAGEID#2188.

On July 21, 2017, Schlaegel called in a "locate request" to the Ohio Utility Protection Services ("OUPS") requesting utility location and marking. It also called in every ten days thereafter requesting "refresh marks." The laborers, operators and foremen on a Schlaegel project rely on these markings.

In addition to the markings, Schlaegel received and relied on the construction drawings, or "blueprints," that the county provided for the project. The drawings depict AT&T lines running north of the northeast wing wall by the bridge and do not depict the lines running underneath the wing wall. The drawings also contain language that requires "the Contractor" to "NOTIFY AT&T LONG DISTANCE OF WORK BEING DONE AROUND AT&T FACILITIES. THE AT&T OSP[outside plant]TECHNICIAN MUST BE ON-SITE." Doc. #28-9, PAGEID#1546.

On July 31, 2017, while removing the wing walls at the north bridge, the Schlaegel operator struck AT&T's underground facilities.  Chris Schlaegel did not advise anyone else at the company of the AT&T representative's request to be present.  At the time the operator was using "heavy mechanized equipment" as opposed to using a shovel and "pot-holing" the site.  Although the use of hand tools "or other "less aggressive alternatives to heavy mechanized equipment" is preferable when excavating in the immediate vicinity of location marks identifying buried facilities, Schlaegel states that it is not feasible to excavate wing walls in this manner.

3

It is undisputed that the excavation conducted by Schlaegel at the Damage Location caused the damage to AT&T's underground facilities. As a result of this July 31, 2017, excavation, AT&T alleges that Schlaegel caused over $100,000 in property damage to its underground utility facilities, including fiber-optic cable. Doc. #1, PAGEID#3. In addition to the property damage, Schlaegel's excavating also allegedly caused a disruption of services.

## II.  Standard of Review

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous

4

allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998). In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts

5

that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, the Court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits." *Id.* (citations omitted).

**III. Legal Analysis**

**A. Introduction**

AT&T's Complaint alleges three causes of action. The first alleges negligence and that Defendant "owed AT&T a duty" to conduct excavation activities "with caution and reasonable diligence." *Id.* at PAGEID#4. The duty alleged is based on Ohio common law as well as R.C. § 3781.25 et seq. AT&T alleges that the duty was breached when Schlaegel (1) ignored AT&T's request to have its technician present when the wing walls were removed and (2) excavated

6

in the "immediate vicinity" of location markers[3] at the Damage Location with mechanized equipment instead of doing so manually. Plaintiff's second and third causes of action allege negligence *per se* pursuant to Schlaegel's alleged breach of its statutory duties under R.C. § 3781.30, "Duties of excavator," and under R.C. § 3781.31[A][4] for failing to provide one full day of notice of its excavation. *Id.* at PAGEID##4-6.

In response, Schlaegel argues that it has no liability to AT&T for either common law or statutory negligence under R.C. § 3781.25 et seq. It contends that by giving notice to AT&T of its intended excavation as required under R.C. § 153.64, the burden shifts to AT&T to place markings in the location of its underground utility facilities. Schlaegel contends that AT&T failed to mark the location of its facilities and, as a result, it has no liability for any damage to those facilities. Defendant further argues that since the Bales Kenyon Road Project was a public improvement contract and R.C. § 3781.25 et seq. applies only to private improvement contracts, this statue is inapplicable both as evidence of negligence and negligence *per se*.

Schlaegel seeks summary judgment on all claims in Plaintiff's Complaint. AT&T seeks summary judgment as to liability on its first cause of action for

---

[3] Location markers consist of orange paint and flags indicating the presence of AT&T underground facilities.

[4] R.C. § 3781.31, "Markings of excavation sites' prior notice; procedure upon destruction or removal," consists of subsections (A) and (B). The third cause of action in Plaintiff's Complaint alleging negligence *per se* cites only to § 3781.31 (A), marking of the underground utility facilities and request for prior notice.

7

common law negligence and on its second and third causes of action for negligence *per se*.

### B. Negligence and Negligence *Per Se*

In order to establish actionable negligence, one must show the existence of a duty, a breach of that duty and injury resulting proximately therefrom. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989,) citing *Di Gildo v. Caponi*, 18 Ohio St.2d 125, 127, 247 N.E.2d 732 (1969). The common law imposes an affirmative and nondelegable duty on a person excavating underground to inform himself about any underground utilities in the excavation site so that he can avoid damaging them. *See Boyd v. Moore*, 184 Ohio App.3d 16, 2009–Ohio–5039, 919 N.E.2d 283, ¶ 14 (2d Dist.). An excavator who fails to act under this common law duty and digs without first locating underground utilities proceeds at his own risk, and will be liable for any damage he may cause to underground utility lines. *Id*.

Negligence *per se*, alleged in the second and third causes of action, is not the "equivalent to 'a finding of liability *per se* because the plaintiff will also have to prove proximate cause and damages.'" *Robinson v Bates*, (2006), 112 Ohio St.3d 17, 24, 2006-Ohio-6362, 857 N.E.2d 1195 (quoting *Sikora v. Wenzel* (2000), 88 Ohio St.3d 493, 496, 727 N.E.2d 1277.) "The concept of negligence *per se* allows the plaintiff to prove the first two prongs of the negligence test, duty and breach of duty, by merely showing that the defendant committed or omitted a specific act

8

prohibited or required by statute; no other facts are relevant." *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, at ¶ 15. In negligence *per se*, the plaintiff need show only that a statute defined the standard of care to which the defendant's conduct must have conformed and that the defendant violated the statute. *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 565, 697 N.E.2d 198. Unless the negligence *per se* statute contemplates otherwise, defenses and excuses are permitted and if, after taking reasonable diligence and care, the actor is unable to comply, the violation will ordinarily be excused. Restatement of the Law 2d, Torts (1965) 38, Section 288A, Comment g.

### C. Schlaegel's Motion for Summary Judgment, Doc. #30

#### 1. Plaintiff's First Cause of Action - Negligence

Schlaegel argues that there is no genuine issue of material fact and that judgment should be entered in its favor as to Plaintiff's negligence claim. Defendant correctly asserts that to establish negligence, Plaintiff must first show the existence of a duty. Although "the common law imposes an affirmative and nondelegable duty on a person excavating underground to inform himself about any underground utilities in the excavation site," *Vectren Energy Delivery of Ohio, Inc. v. Huber*, Montgomery Co. App. No. 25635, 2013-Ohio-4069, 2013 WL 5310614, ¶11, "[o]nce a contractor notifies OUPS[5] of the location of a proposed

---

[5] The Ohio Utility Protection Services ("OUPS") is a non-profit corporation, established pursuant to R.C. 3781.25 et seq., to operate a one-call notification service that provides free locating services of all underground facilities.

9

excavation, it fulfills its duty to inform itself of the location of the underground utility facilities." *Ohio Gas Co. v. Blaze Building Corp.*, Williams App. No. WM-03-019, 2004-Ohio-2881, 2004 WL 1232037, ¶11, citing *Ohio Edison Co. v. Wartko Construction*, 103 Ohio App.2d 177, 180, 658 N.E.2d 1118 (11th Dist. 1995).

Schlaegel asserts that because it complied with R.C. § 153.64, it satisfied any duty it had to Plaintiff. This statute, which pertains to public improvements, requires a contractor to give at least two days' notice, and no more than ten working days' notice, to the owners of an underground facility of its intention to commence operations in the area where the underground utility is located. Once this notice is given, the utility owner is required, within approximately two days, to "stake, mark, or otherwise designate the location of the underground utility facilities in the construction area in such a manner as to indicate their course together with the approximate depth at which they were installed." § 153.64(C). Assuming that the contractor gives this notice, it is not responsible to "the owner of the underground utility facility if underground utility lines are encountered not as marked. . ., unless the contractor. . . has actual notice of the underground utility facility." § 153.64(D).[6]

---

[6] Schlaegel asserts that although R.C. § 3781 does not apply to the Bale Kenyon Road Project, it, along with R.C. § 153.64, dictates the responsibilities of excavators and does not impose upon them the duty of finding underground facilities. *E. Ohio Gas Co. v. Kenmore Constr. Co.*, 9th Dist. Summit No. 19567, 2001 Ohio App. LEXIS 1444; *United Telephone Co. of Ohio v. C.J. Mahan Constr. Co.*, 63 Ohio App.3d 437, 579 N.E.2d 250 (1993); *Northeast Ohio Natural Gas Corp. v. Stout Excavating*, 156 Ohio App.3d 144, 2004-Ohio-600, 804 N.E.2d 1040.

Schlaegel argues that it gave the statutory notice to AT&T as required under § 153.64.  It further argues that it had no "actual notice" of the facilities, since the county construction drawings were inaccurate.  Additionally, according to Schlaegel, no one who was present at the Damage Location on the day of the incident will testify that the Damage Location was marked.  Finally, because Defendant contends that its compliance with § 153.64 extinguishes any liability to Plaintiff for damage to its facilities, it had no duty to have a representative of AT&T present at the excavation site and its use of "mechanized equipment" in the location was reasonable. Accordingly, Defendant argues there is no liability for negligence.

AT&T contends that Schlaegel's Motion should be denied as to its claim for negligence.  It asserts that not only do genuine issues of material fact exist as to whether Defendant had "actual notice" of the location of Plaintiff's facilities under § 153.64, but that evidence of negligence exists under § 3781.30.  It argues that Defendant ignored its July 13, 2017, request to have its technician present when the wing walls were removed, and excavated in the "immediate vicinity" of location markers at the Damage Location with mechanized equipment instead of manually.

### a. Actual Notice under R.C. § 153.64

Plaintiff argues that Jerry Ownings, the Utility Coordinator for the Delaware County Engineer's Office, testified that the construction drawings are accurate if they are "more or less within two feet or so" of where the utility actually exists

11

and that he "expects" most excavators to know that. Doc. #29, PAGEID#183820. Additionally, AT&T asserts that Dennis Polanco used orange flags to mark the location of those facilities. Plaintiff argues that the photographs show "AT&T flags and orange paint" as markings in the immediate vicinity of the excavation. Although an examination of the photographs does not show any orange paint and there appears to be but one orange flag, even one flag precludes the granting of Schlaegel's Motion on the first cause of action for negligence. Finally, Plaintiff's representative, Chad Harkness, met with Chris Schlaegel on July 13, 2017, and asked to be present at the excavation of the wing walls since Plaintiff's facilities were running under them. This request was confirmed later in the day via email. Because there are genuine issues of material fact as to the accuracy of the construction drawings and Defendant's actual notice of Plaintiff's facilities in the vicinity of the wing wall on the north bridge, Defendant's Motion must be denied on the issue of "actual notice" under R.C. § 153.64.

### b. Evidence of Negligence under R.C. § 3781.30

Plaintiff also argues that genuine issues of material fact exist as to whether Defendant is in breach of duties that are set forth in R.C. § 3781.25 et seq. AT&T asserts that as a result of revisions that became effective March 27, 2013, to § 3781.25 et seq., the "one call law," this statute is applicable to public improvements such as the Bale Kenyon Road Project. Specifically, the limiting language found in § 3781.27 was removed, and as such, §§ 3781.27 to 3781.32

12

became applicable to public improvements.[7] As a result of this revision, Plaintiff contends, and this Court agrees, that Defendant also has affirmative statutory duties to Plaintiff under R. C. §§ 3781.30, "Duties of excavators," and 3781.31, "Notifying of commencement of excavation or of removal of markings." As stated by the Second District Court of Appeals:

> The Revised Code contains a scheme, in R.C. 3781.25 et seq., that 'seeks to prevent damage to underground utilities in order to prevent potential injuries and to protect a variety of interests [including] the utility owners' interest in preventing damage to their equipment * * *.' *Boyd* at ¶ 23. We have held that this scheme imposes the common-law duty on an excavator. *Id.* at ¶ 24.

*Vectren Energy Delivery of Ohio, Inc. v. Huber*, Montgomery Co. App. No. 25635, 2013-Ohio-4069, 2013 WL 5310614, ¶11.

Under R.C. § 3781.30 (A)(1)(2)(3) and (4), Defendant has the following affirmative duties: (1) a duty to "maintain reasonable clearance between any underground facility and the cutting edge or point of powered equipment," § 3781.30 (A)(1); (2) a duty to "protect and preserve the markings of tolerance zones of underground utility facilities until those markings are no longer required for proper safe excavations," § 3781.30 (A)(2); (3) a duty "when approaching and excavating within the tolerance zone of underground utility facilities with powered equipment, to require an individual other than the equipment operator, to visually monitor the excavation activity for any indication of the underground utility facility," 3781.30 (A)(3); and (4) a duty to "conduct the excavation within the

---

[7] Defendant's citations to cases in support of his argument that R.C. § 3781.25 et seq. does not apply to public improvement contracts are inapposite since the underlying public projects in these cases occurred prior to the effective date of the March 27, 2013, revision.

13

tolerance zone of underground utility facilities in a careful, prudent, and nondestructive manner, when necessary, in order to prevent damage." § 3781.30 (A)(4).

Additionally, § 3781.31(A) states that after marking its underground utility facilities, a utility may request prior notice of the actual excavation. Excavators, under this section, "shall" provide notice to the utility at least one full working day prior to commencement of the excavation.

Including the "Duties of excavator" in § 3781.31(A)(1), (2), (3) and (4) as evidence of negligence and the prior notice requirement of § 3781.31, also creates genuine issues of material fact that preclude Shlaegel's Motion on AT&T's first cause of action. This is so, since under § 3781.29 (A)(1), Plaintiff is required, after receiving the appropriate notice from the excavator, to designate the approximate location of the underground facilities with the appropriate color-coded flag. Because Defendant contends that no such markings existed on the day of the excavation and Plaintiff disagrees, at least one genuine issue of material fact exists.

Based on the above, the Court finds that genuine issues of material fact exist as to (1) whether Defendant had "actual notice" of the location of the facilities such that liability is not extinguished as a matter of law under § 153.64 and (2) whether Defendant is in breach of the statutory duties set forth in §§ 3781.30 (A)(1)(2)(3) and (4) and 3781.31. Accordingly, Defendant's Motion is denied as to Plaintiff's first cause of action for negligence.

14

### 2. Plaintiff's Second Cause of Action, Negligence *Per Se*, R.C. § 3781.30 and Third Cause of Action, Negligence *Per Se*, R.C., § 3781.31

Schlaegel next argues that its Motion should be sustained as to Plaintiff's Second and Third Causes of Action for negligence *per se* under R.C. §§ 3781.30 and 3781.31(a). Defendant asserts that no liability exists under these two sections, because the Bale Kenyon Road Project is a public improvement contract and § 3781.25 et seq. applies only to private contracts. As such, Defendant contends, Plaintiff sued under the wrong statute and the only applicable statute is R.C. § 153.64 with which it complied.

As stated in the preceding section, R.C. § 3781.25 et seq. was revised and became effective on March 27, 2013. As such §§ 3781.30 and 3781.31(a) apply to this public improvement contract and for the reasons stated above, genuine issues of material fact exist as to whether Defendant complied with these statutes. Accordingly, Schlaegel's Motion is overruled as to Plaintiff's second and third cause of action for negligence *per se* under §§3781.30 and 3781.31(a).

### C. AT&T's Motion for Summary Judgment as to Liability, Doc. #37

#### 1. Plaintiff's First Cause of Action - Negligence

Plaintiff argues in its Motion that Defendant is negligent because its "excavation conduct which proximately caused AT&T's damages was unreasonable and imprudent, lacking in ordinary care and inobservant of the law, and thus in breach of its common law duties." Doc. # 37, PAGEID#2201. It argues

15

that as a result of Defendant's July 13, 2017, meeting with the AT&T representative, Defendant was aware that AT&T's facilities ran under at least one of the wing walls and that the AT&T technician needed to be present for the removal. Plaintiff also argues that Defendant was negligent by excavating in the "immediate vicinity" of location markers at the Damage Location with mechanized equipment instead of doing so manually.

With respect to the July 13, 2017, meeting, AT&T cites to the deposition transcript of Chris Schlaegel, contending that Defendant testified that he had agreed to "have someone [from AT&T] present" for the excavation of the wing walls. Doc. #41, PAGEID#2404; Doc. #23, PAGEID#177. Plaintiff also cites to the confirming email it sent to Defendant on the same date as support for its contention that Defendant had notice of the underground facilities at the wing walls and was in breach of its duty. In response, Defendant does not deny that a meeting occurred on this date between AT&T's representative, Chad Harkness, and Chris Schlaegel and that an email was sent regarding the meeting. Defendant asserts, however, that AT&T 's concern in the meeting was with excavation at the *south* bridge wing wall as opposed to both the north and south bridge wing walls. Doc. #40, PAGEID#2325; Doc. #23, PAGEID#177.

The Court has reviewed the cited deposition testimony of Chris Schlaegel and finds that the testimony is unclear as to whether he is referring to both the north and south bridge wing walls, as AT&T asserts, or only the south wing wall as Defendant contends. Doc. #23, PAGEID#176-177. Additionally, although the

July 13, 2013, email sent to "J&J Schlaegel, Inc." and others states that an AT&T technician "will need to be on site for the removal of the wing walls," in a separate note to Dennis Polcano of AT&T, in the same email, Chad Harkness states "Dennis – The AT[&T Fiber passes under the south wing wall. I can be there if you get tied up." Doc. #37, PAGEID#2188.

Accordingly, there is a genuine issue of material fact on the issue of negligence and Defendant's alleged failure to have an AT&T representative present at the excavation of the north bridge wing wall.

Plaintiff also alleges that Defendant breached a duty of care by using mechanized equipment in the "immediate vicinity" of the location markers. The Court finds, for the reasons stated earlier, that the statutory duties in § 3781.30 (A)(1), (2) and (3) and § 3781.31 apply to this public improvement contract and that these duties further define Defendant's standard of care. Because there is a genuine issue of material fact as to whether the location where the excavation occurred was marked, as required by § 3781.29(A)(1), Plaintiff's Motion regarding negligence due to Defendant's alleged failure to comply with the duties in § 3781.29 et seq., is denied.

2. **Plaintiff's Second Cause of Action Negligence** *Per Se*, **R.C. § 3781.30 and Third Cause of Action Negligence** *Per Se*, **R.C. § 3781.31**

Plaintiff argues that its Motion should be granted on its second cause of action for negligence *per se* under § 3781.30 and on its third cause of action for negligence *per se* under § 3781.31. R.C. 3781.25 et seq. serves a public safety

17

purpose "in particular, the safety of construction workers and persons living, working, or playing near an excavation location." *Boyd* at ¶ 21. Violation of a statute imposed for public safety will support a finding of negligence *per se*, depending upon the degree of specificity. *Sikora v. Wenzel*, 88 Ohio St.3d 493, 2000-Ohio-406, 727 N.E.2d 1277 (2000).

With respect to its second cause of action for negligence *per se* under § 3781.30, Plaintiff contends that § 3781.30(A)(1) required Defendant to "maintain reasonable clearance between any underground facility and the cutting edge or point of powered equipment." Because Schlaegel "chose to dispense with the more costly and time-consuming method of digging with a hand shovel (to 'pothole') to expose the facilities without damaging them" and instead used powered equipment, this section was violated." Doc. #37, PAGEID#2195.  Plaintiff next argues that under § 3781.30(A)(2), Schlaegel has a duty to "protect and preserve the markings of tolerance zones of underground utility facilities until those markings are no longer required for proper safe excavations." § 3781.30 (A)(2).  AT&T has argued that the evidence shows that after the facility had been struck, AT&T flags were found "strewn about by the excavation activities." Doc. #37, PAGEID#2196.  Plaintiff's final assertion is that under § 3781.30(A)(3), Defendant has a duty "when approaching and excavating within the tolerance zone of underground utility facilities with powered equipment," to have "an individual other than the equipment operator, to visually monitor the excavation activity for any indication of the underground utility facility." § 3781.30 (A)(3).

18

Because of the July 13, 2017 meeting with the AT&T representative and Chris Schlaegel, and the confirming email sent that same day, Plaintiff argues that Defendant violated this section.

Plaintiff argues that there is no genuine issue of material fact but that Defendant violated § 3781.30(A)(1)(2) and (3) and that it incurred damage as a result. AT&T's argument, however, however, presumes that the utility has complied with §3881.29, "Marking of excavation sites."  Schlaegel refutes this.  Its position is not that AT&T's markings had almost been completely destroyed or removed before the excavation was completed, but that "there is no evidence of any flags or paint on the premises at all and the absence of these markings after [Defendant] had properly called in its OUPS ticket meant there were no utilities on the premises to disrupt." Doc. #40, PAGEID#2322.  Accordingly, because there is a genuine issue of material fact as to whether AT&T has complied with §3881.29 and marked the excavation site as required, Plaintiff's Motion as to its second cause of action, negligence *per se* under § 3781.30(A)(1)(2) and (3), is overruled.

Plaintiff's third cause of action alleging negligence *per se* is based upon R.C. 3781.31, entitled "Markings of excavation sites; prior notice; procedure upon destruction or removal." This section reads as follows:

> (A) When a utility marks its underground utility facilities in accordance with section 3781.29 of the Revised Code, the utility may request that the excavator provide prior notice to the utility of the actual commencement of the excavation. An excavator that receives a request for notice under this division shall provide the notice to the utility at least one full working day prior to the commencement of excavation. The excavator may make this notice by telephone.

19

(B) If the markings of underground utility facilities made under section 3781.29 of the Revised Code are destroyed or removed before excavation is completed, the excavator shall notify the utility through the protection service that the markings have been destroyed or removed, and the utility shall remark the facilities in accordance with section 3781.29 of the Revised Code.

R.C. 3781.31

As seen from this statute, to be applicable, the utility must first mark its underground utility facilities as required by § 3781.29. In this case, Schlaegel maintains that there were no markings "on the premises at all." Doc. #40, PAGEID#2322. Because there is a genuine issue of material fact on this factual issue, AT&T's Motion as to the third cause of action, negligence *per se* under R.C. 3781.31, is overruled.

### IV. Conclusion

For the reasons set forth above, the Motion for Summary Judgment of Defendant, J&J Schlaegel, Inc., Doc. # 30, is OVERRULED. The Motion for Summary Judgment of Plaintiff, AT&T Corporation as to Liability, Doc. #37, is OVERRULED.

Date: December 18, 2020

*Walter H. Rice*  (tp - per Judge Rice authorization after his review)

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

20